IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SANDRA SMITH,

        Plaintiff,

v.                                                      CIVIL ACTION NO. 2:16–cv–11817

C. R. BARD, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
(Defendant's Motion for Summary Judgment)

Pending before the court is the Motion for Summary Judgment [ECF No. 28] filed by defendant C. R. Bard, Inc. ("Bard"). The plaintiff has responded [ECF No. 32], and Bard has replied [ECF No. 34]. Thus, the Motion is ripe for adjudication. As set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

I.     **Background**

This action involves a Utah plaintiff who was implanted with the Align TO Urethral Support System, a mesh product manufactured by Bard, on September 18, 2009, in Melrose Park, Illinois. Short Form Compl. ¶¶ 1–12 [ECF No. 1]. This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("MDL") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 24,000 cases currently pending, approximately 3000 of which are in the C. R. Bard, Inc. MDL, MDL No. 2187.

In an effort to manage the massive Bard MDL efficiently and effectively, the court decided to conduct pretrial discovery and motions practice on an individualized basis. To this end, I ordered the plaintiffs and defendants to submit a joint list of remaining cases in the Bard MDL, MDL 2187, with claims against Bard and other defendants where counsel has at least twenty cases in the Bard MDL. The list included nearly 3,000 cases. From these cases, I selected 332 cases to become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order No. 244, *In re C. R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10–md–02187, Mar. 3, 2017, https://www.wvsd.uscourts.gov/MDL/2187/orders.html. Upon the creation of a wave, a docket control order subjects each active case in the wave to the same scheduling deadlines, rules regarding motion practice, and limitations on discovery. I selected the instant civil action as a Wave 5 case.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the moving party may produce an affidavit to demonstrate the absence of a genuine issue of material fact. *See id.* The moving party, however, is not required to do so and may discharge this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see also Pumphrey v. C.R. Bard, Inc.*, 906 F. Supp. 334, 336 (N.D. W. Va. 1995). If the moving party sufficiently points out to the court those portions of the record that show that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to come forward with record evidence establishing a genuine issue of material fact. *Pollard v. United States*, 166 F. App'x 674, 678 (4th Cir. 2006) (citing *Celotex, Corp.*, 477 U.S. at 325).

Should the burden shift, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Id.* at 252. Likewise, conclusory allegations or unsupported speculations, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v.*

*Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997). Summary judgment is therefore appropriate when, after adequate time for discovery, the moving party first discharges the initial burden and then the nonmoving party does not make a showing sufficient to establish a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322–23.

### B. Choice of Law

The parties agree that Illinois choice-of-law principles apply to this case and that these principles compel the application of Illinois substantive law to the plaintiff's claims.

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citations omitted). If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as the plaintiff did in this case, the court consults the choice-of-law rules of the state where the plaintiff was implanted with the product. *See Sanchez v. Bos. Sci. Corp.*, 2:12–cv–05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, the court will follow the better-reasoned authority that applies

4

the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). In this case, the implantation surgery took place in Illinois. Thus, Illinois's choice-of-law principles guide the court's choice-of-law analysis.

Illinois has adopted the most-significant-relationship test as enumerated in the Restatement (Second) of Conflict of Laws. *See Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d, 893, 901 (Ill. 2007); *Gregory v. Beazer E.*, 892 N.E.2d 563, 578 (Ill. App. Ct. 2008). Under that test, courts should consider the following factors: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and business of the parties, and (4) the place where the relationship, if any, between the parties is centered. *See Townsend*, 879 N.E.2d at 901 (citing Restatement (Second) of Conflict of Laws § 145(2), at 414 (1971)). This choice of law analysis applies to each individual issue in a case. *See id.*; *Gregory*, 892 N.E.2d at 578.

Here, the plaintiff resides in Illinois, received her mesh implant and follow-up treatment in Illinois, and her alleged injuries occurred in Illinois. Accordingly, I **FIND** that Illinois has the most significant relationship to the occurrence and the parties, and I apply Illinois's substantive law to this case.

III.    Analysis

Bard argues it is entitled to summary judgment on all of the plaintiff's claims because they are barred by the applicable statutes of limitations. Bard also argues it is entitled to summary judgment on the plaintiff's claims for negligent marketing,

labeling, packaging, selling, testing, and inspecting; manufacturing defect; and breach of express and implied warranties because these claims lack legal or evidentiary support.

### A. Conceded Claims

The plaintiff concedes her claims for manufacturing defect, in both negligence and strict liability. Accordingly, Bard's Motion regarding these claims is **GRANTED**.

### B. Breach of Express and Implied Warranties

As this court has previously held when applying Illinois law, breach of warranty "claims are simply repackaged failure-to-warn claims." *See Huskey v. Ethicon, Inc.*, 29 F. Supp.3d 736, 744 (S.D. W. Va. 2014). These claims must fail because, '[i]f the learned intermediary doctrine 'could be avoided by casting what is essentially a failure to warn claim under a different cause of action . . . then the doctrine would be rendered meaningless.'" *Id.* (quoting *In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 709 (E.D. Tex. 1997)). Thus, as I did in *Huskey*, I once again "predict with confidence that, if confronted with this issue, the Illinois Supreme Court would hold that the learned intermediary doctrine applies to all claims based on a medical device manufacturer's failure to warn, including . . . breach of warranty." *Id.* Accordingly, Bard's Motion is **GRANTED** with respect to Count V (Breach of Express Warranty) and Count VI (Breach of Implied Warranty).

### C. Statute of Limitations

Bard argues it is entitled to summary judgment on the plaintiff's negligence and strict liability claims because they are barred by the statute of limitations. The

plaintiff responds that there is a genuine dispute of material fact regarding the date on which her causes of action accrued.

The Illinois Code of Civil Procedure provides that personal injury claims must be brought within two years of the date when the cause of action accrues. 735 Ill. Comp. Stat. § 5/13-202. "As a general rule, a cause of action for personal injuries accrues when the plaintiff suffers injury." *Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 897 (Ill. 1995). The discovery rule "postpones the commencement of the limitations period until a plaintiff learns or reasonably should have learned of her injury and knows or reasonably should have known that it was wrongfully caused." *Caywood v. Gossett*, 887 N.E.2d 686, 692 (Ill. App. Ct. 2008).

> However, the term "wrongfully caused" does not mean knowledge by plaintiff of a specific defendant's negligent act or knowledge that an actionable wrong was committed; rather, a person knows or reasonably should know an injury is "wrongfully cause" when he or she possess sufficient information concerning [an] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. Once a plaintiff is on inquiry to determine whether actionable conduct is involved, the burden falls upon that plaintiff to inquire further as to the existence of a cause of action.

*Id.* (alteration in original) (citations and internal quotation marks omitted) (citing *Hoffman v. Orthopedic Sys., Inc.*, 765 N.E.2d 116, 122 (Ill. App. Ct. 2002)).

Bard asserts that the plaintiff's causes of action accrued shortly after her implantation surgery in September 2009, when she first began experiencing symptoms. The plaintiff, on the other hand, asserts that her causes of action accrued in June 2015, when her daughter told her about an advertisement she had seen on television regarding transvaginal mesh lawsuits. After viewing the evidence

7

submitted by both parties, I **FIND** that a genuine dispute of material fact exists regarding when the plaintiff reasonably should have known that her injury was wrongfully caused. Accordingly, Bard's Motion on this point is **DENIED**.

### D. Negligent Marketing, Labeling, Selling, Testing, and Inspecting

Finally, Bard contends that it is entitled to summary judgment on the plaintiff's negligence claim to the extent that it alleges negligent marketing, labeling, packaging, selling, testing, and inspecting because the plaintiff has not produced expert testimony that Bard breached its standard of care in these respects. The plaintiff disputes Bard's contentions that these claims fail for lack of evidence, or that expert testimony is required to establish negligence.

I have previously addressed similar arguments in *Kaiser v. C.R. Bard, Inc.*, No. 2:12-cv-3655, 2016 WL 6782743, at *3 (S. D. W. Va. Nov. 15, 2016) and *Alvarez v. C.R. Bard, Inc.*, No. 2:13-cv-26891, 2017 WL 1089188, at *3 (S.D. W. Va. Mar. 21, 2017). However, as this MDL has aged, the court has had additional opportunities to conduct further review of the evidence submitted by the plaintiff in support of her negligence claim. I now **FIND** that a genuine dispute of material fact exists with regard to the plaintiff's claims of negligent marketing, labeling, packaging, selling, testing, and inspecting. Accordingly, Bard's Motion on this point is **DENIED**.

### IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Motion for Summary Judgment [ECF No. 28] is **GRANTED** with respect to Count I (Negligence), to the extent that it alleges negligent manufacturing; Count III (Strict Liability –

8

Manufacturing Defect); Count V (Breach of Express Warranty); and Count VI (Breach of Implied Warranty), and these claims are **DISMISSED with prejudice**. Bard's Motion is **DENIED** in all other respects.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 5, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE